UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| BRANDSAFWAY SOLUTIONS, LLC | ) | |
| 1220 Miller Cut-Off Road | ) | |
| La Porte, TX 77571 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-CV-532 |
| | ) | |
| WILLIAMS RESTORATION & | ) | |
| WATERPROOFING, INC. | ) | |
| 141 Jones Boulevard | ) | |
| La Vergne, Tennessee 37086-3228 | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**

**Introduction and Summary of Dispute**

1.       This Complaint seeks a declaratory judgment pursuant to 28 U.S.C.

§§ 2201-2202 and a money judgment for breach of contract in connection with a contractual

defense and indemnity obligation Defendant Williams Restoration & Waterproofing, Inc.

("Williams") owes to Plaintiff BrandSafway Solutions, LLC ("BrandSafway").

2.       Williams hired BrandSafway's predecessor-in-interest, MobleySafway

Solutions, LLC, to construct scaffolding at the Kentucky State Capitol pursuant to a contract

that required Williams to defend MobleySafway and its successors against any claim relating

to the contract, the scaffolding, or MobleySafway's work. The same provision required

Williams to indemnify MobleySafway and its successors for any expenditure associated with

the contract, including attorney fees, provided the expenditure was not necessitated solely by the negligence of MobleySafway.

3. During the course of the Kentucky State Capitol project, a Williams employee, Carolos Romero Hernandez ("Hernandez") was injured when he fell approximately 30 feet while working on the scaffolding. Representatives of the Kentucky Labor Cabinet Occupational Safety and Health Program ("Kentucky OSHP") investigated the accident shortly after it occurred. Kentucky OSHP concluded that Williams's foreman failed to inspect the scaffolding as required and that Williams could not prove that the employees working at the time of the accident were properly credentialed to inspect scaffolding. Kentucky OSHP issued Williams a citation for these two violations, while finding no wrongdoing on the part of MobleySafway in a separate but related investigation.

4. Despite the conclusion of Kentucky OSHP that violations by Williams contributed to the accident, Hernandez filed suit against MobleySafway and BrandSafway on a negligence theory in federal court in Kentucky. BrandSafway tendered the defense of that action to Williams pursuant to the indemnification provision in the parties' contract, but Williams refused the tender.

5. BrandSafway seeks a declaration that (a) the indemnification provision in the parties' contract applies to the Kentucky Capitol Project accident; (b) Williams is obligated to assume the defense of BrandSafway in the Kentucky lawsuit; and (c) Williams is obligated to indemnify BrandSafway for any and all damages, losses, liabilities, and expenses relating to the Kentucky Capitol Project accident.

6.      BrandSafway also seeks a money judgment compensating it for any and all damages arising out of Williams' failure to defend or indemnify BrandSafway, which constitutes a breach of the parties' contract.

## Parties, Jurisdiction, and Venue

7.      BrandSafway is a limited liability company formed under the laws of the State of Texas with its principal place of business at 1220 Miller Cut-Off Road, La Porte, Texas 77571. BrandSafway is registered to do business in Wisconsin and Kentucky (among other jurisdictions), and is the successor-in-interest to MobleySafway Solutions, LLC.

8.      Williams is a corporation formed under the laws of the State of Tennessee with its principal place of business at 141 Jones Boulevard, La Vergne, Tennessee 37086-3228

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the plaintiff and the defendant are not citizens of the same state and the amount in controversy exceeds $75,000.

10.      Venue is proper pursuant to the parties' contract, which designates this Court as one of two compulsory venues for any cause of action arising out of the contract.

## Factual Background

**I.      Williams hires MobleySafway to build scaffolding for use during Williams's cleaning and restoration of the Kentucky State Capitol.**

11.      In or about September 2016, Kentucky's Finance and Administration Cabinet hired Williams to clean and repair stone and mortar at the Kentucky State Capitol in Frankfort.

3

12. Williams subsequently hired MobleySafway to provide scaffolding for the project. Williams and MobleySafway executed a contract memorializing their agreement on September 19, 2016 ("the Contract"). A copy of the Contract is appended to this Complaint as Exhibit 1.

13. The Contract included a section entitled "Important Safety Guidelines." (Ex. 1 at 2.) The very first safety guideline highlights the importance of Williams (the "customer" under the contract) following all applicable laws and regulations with regard to employee competency and inspection of the scaffolding:

1. **Competent Person**. Scaffold must be erected, used, moved, and disassembled only under the direction of a Competent Person. The customer is responsible for following any and all applicable federal and state occupational safety and health laws, rules, regulations and ordinances in addition to applicable city, county or local codes and specific rules with regard to Competent Person and inspection requirements for scaffolds.

14. "Competent Person" is a term of art in the field of occupational health and safety, defined at 29 CFR § 1926.32(f) as "one who is capable of identifying existing and predictable hazards in the surroundings or working conditions which are unsanitary, hazardous, or dangerous to employees, and who has authorization to take prompt corrective measures to eliminate them."

15. The Contract also included MobleySafway's Standard Terms and Conditions. (Ex. 1 at 3-4.) Those Standard Terms and Conditions included a paragraph titled "Indemnification," which created a broad indemnity obligation flowing from Williams to MobleySafway ("the Indemnity Provision"). (*Id.* at 3.)

16. The Indemnity Provision requires Williams to indemnify, defend, and hold MobleySafway harmless from and against any and all claims, suits, causes of action,

4

proceedings, and/or judgments, as well as all damages, losses, liabilities, and expenses (including reasonable attorney fees and costs) resulting from, arising out of, or in any way related to the Contract, the scaffolding, or the services performed by MobleySafway for Williams. (Ex. 1 at 3.)

17.     The only limitation on Williams's indemnity obligation vis-à-vis the Kentucky State Capitol project is that the obligation does not apply to liabilities "caused solely by the negligence of MobleySafway." (Ex. 1 at 3.)

18.     As the direct successor to MobleySafway, BrandSafway stepped into the shoes of MobleySafway with regard to the Contract. Williams's indemnity obligations apply with equal force to the benefit of BrandSafway as they did to the benefit of MobleySafway.

19.     The Contract designates either this Court or the Circuit Court for Waukesha County, Wisconsin as mandatory forums for "any cause of action arising out of" the Contract. (Ex. 1 at 4.) The Contract also provides that it "shall be governed by and construed under the laws of the State of Wisconsin without respect to any conflicts of law provision." (*Id.*)

## II.     MobleySafway constructs scaffolding at the Kentucky State Capitol and dismantles scaffolding as necessary at Williams's request.

20.     MobleySafway completed construction of a scaffold with nine "bucks," or levels, at the Kentucky State Capitol in November 2016. Williams began restoration work on the Capitol shortly thereafter.

21.     During the course of the project, Williams foreman Valentin Trujillo would contact MobleySafway superintendent James Edmonds when Williams wished to have a

5

section of scaffolding dismantled. MobleySafway would typically remove the section of scaffolding within a few days of the request.

22.     MobleySafway used a color-coded tag system to alert workers of the condition of sections of scaffolding. Green meant a section was safe to use, yellow meant a section could be used with caution, and red meant a section should not be used. Tags were located at ground access points on the scaffolding.

### III.     A Williams employee is injured while working on a red-tagged section of scaffolding that Williams had requested be dismantled several days earlier.

23.     At some point in the week preceding February 15, 2017, Williams foreman Trujillo contacted MobleySafway to request that MobleySafway dismantle a section of scaffolding.

24.     In anticipation of removing the section of scaffolding, MobleySafway employees placed red tags on the two access points for that section: a stairway on one end of the section and a ladder on the other end.

25.     On February 15, 2017, after MobleySafway had placed red tags on the access points of the section to be removed, Mr. Trujillo instructed Williams employee Carlos Romero Hernandez to ascend that section to inspect and correct items on a "punch list." Mr. Trujillo had not inspected the scaffolding prior to that day's shift. The last time Mr. Trujillo had inspected the scaffold was approximately a week before February 15, 2017.

26.     While Mr. Hernandez was working on the seventh buck of the scaffold, he claims that a plank gave way and Mr. Hernandez fell to the fourth buck, approximately 30 feet below. Mr. Hernandez suffered injuries to his head and neck and was hospitalized for several days.

6

**IV.     A Kentucky OSHP investigation finds no wrongdoing by MobleySafway and issues two citations to Williams for safety-related violations.**

27.     Shortly after the accident involving Mr. Hernandez, Kentucky OSHP investigated the conduct of both Williams and MobleySafway before the incident.

28.     The Kentucky OSHP investigation found no wrongdoing by MobleySafway. The Kentucky OSHP found that MobleySafway was responsible for and accomplished three things: (1) erecting the scaffold, (2) dismantling the scaffold at the request of the user of the scaffold, and (3) communicating with Williams.

29.     In contrast, Kentucky OSHP found that Williams had committed two serious violations of federal regulations.

30.     First, Kentucky OSHP found that Williams violated 29 CFR § 1926.451(f)(3) by failing to have a competent person inspect the scaffold and scaffold components for visible defects before each work shift.

31.     Second, Kentucky OSHP found that Williams violated 29 CFR § 1926.454(b) by failing to have each employee involved in erecting, disassembling, moving, operating, repairing, maintaining, or inspecting a scaffold trained by a competent person to recognize any hazards associated with the work in question.

32.     Kentucky OSHP issued a citation and imposed a $2,800 penalty on Williams for these violations.

33.     The Kentucky OSHP report on Williams's violations explained that it was Mr. Trujillo's responsibility to inspect the scaffolding before every shift. Inspection was particularly important in light of Mr. Trujillo having asked MobleySafway to dismantle the scaffolding several days before the incident.

7

34.     Kentucky OSHP found that Mr. Trujillo likely would have seen the red flags placed by MobleySafway if he had inspected the relevant section of scaffolding on February 15, 2017, which would have alerted him that workers should not use that section.

35.     Kentucky OSHP was not able to determine how a plank became unsecured, but noted in its report that "[i]t is unlikely . . . that it was left unsecured by MobleySafway, whose job was to erect or dismantle entire sections of scaffold at a time."

## V.      Mr. Hernandez files suit against BrandSafway and Williams refuses BrandSafway's tender despite the Kentucky OSHP report.

36.     On February 12, 2018, Mr. Hernandez filed civil action number 2:18-cv-00023-WOB-CJS against BrandSafway and MobleySafway in the United States District Court for the Eastern District of Kentucky, Covington Division. On February 16, 2018, Mr. Hernandez's lawsuit was transferred to the Frankfort Division of the United States District Court for the Eastern District of Kentucky, where it is now pending as case number 3:18-cv-00007-GFVT-EBA ("the Hernandez Lawsuit").

37.     Mr. Hernandez alleges in his lawsuit that MobleySafway was negligent and that this negligence was the cause of Mr. Hernandez's injuries.

38.     BrandSafway timely filed its Answer on April 4, 2018. BrandSafway denies that it was negligent and denies that it is liable to Mr. Hernandez for his injuries.

39.     In a letter dated April 17, 2018, BrandSafway tendered the defense of the Hernandez Lawsuit to Williams pursuant to the Indemnity Provision.

40.     Williams rejected BrandSafway's tender in a letter dated May 15, 2018. Despite having received the Kentucky OSHP report attributing responsibility for the Hernandez

accident to Williams, Williams's justification for rejecting the tender was the limitation in the Indemnity Provision for "liability caused solely by the negligence of MobleySafway."

41.     The Kentucky OSHP report precludes any reasonable argument that Mr. Hernandez's injuries were caused solely by the negligence of MobleySafway, so Williams breached the Contract by refusing BrandSafway's tender. Williams continues to breach the Contract through its ongoing refusal to defend or indemnify BrandSafway.

## First Cause of Action
## Declaratory Judgment

42.     All prior paragraphs are incorporated by reference.

43.     An actual and justiciable controversy currently exists between BrandSafway and Williams concerning whether Williams is obligated to defend and indemnify BrandSafway with regard to the Hernandez Lawsuit.  A declaration by this Court as to Williams's obligation to defend and indemnify BrandSafway would terminate the controversy giving rise to this cause of action.

44.     Based on the allegations above, BrandSafway is entitled to a declaration that the Hernandez Lawsuit is within the scope of the "claims, suits, causes of action [and] proceedings" against which Williams must defend BrandSafway and for which Williams must indemnify BrandSafway under the Indemnity Provision, and that the "sole negligence" limitation does not apply.

45.     BrandSafway is further entitled to a declaration that Williams is obligated by the unambiguous terms of the Contract to:

a.     Assume the defense of the Hernandez Lawsuit on behalf of BrandSafway;

b.     Indemnify BrandSafway for any and all costs of defense incurred defending the Hernandez Lawsuit to date;

c.     Indemnify BrandSafway for any further damages, losses, liabilities, and/or expenses (including reasonable attorney fees and costs) resulting from, arising out of, or in any way related to the Contract, the scaffolding, or the services performed by MobleySafway for Williams.

## Second Cause of Action
## Breach of Contract

46.     All prior paragraphs are incorporated by reference.

47.     The September 19, 2016 agreement between MobleySafway and Williams is a valid, enforceable, and legally binding contract under Wisconsin law.

48.     As successor-in-interest to MobleySafway, BrandSafway has stepped into the shoes of MobleySafway as a party to the Contract.

49.     Williams' failure to defend or indemnify BrandSafway with regard to the Hernandez Lawsuit constitutes a breach of Williams' obligations under the Indemnity Provision and therefore a breach of the Contract.

50.     BrandSafway has incurred and continues to incur damages in the form of legal fees, court costs, and other outlays relating to the defense of the Hernandez Lawsuit.

51.     Williams is liable to BrandSafway for any and all damages BrandSafway has incurred or will incur relating to the Contract, Mr. Hernandez's claims against BrandSafway or MobleySafway, the Hernandez Lawsuit, or the Kentucky State Capitol project.

WHEREFORE, BrandSafway respectfully seeks the following relief:

A.     A declaration, pursuant to 28 U.S.C. § 2201, that:

i.	the Hernandez Lawsuit is within the scope of the "claims, suits, causes of action [and] proceedings" contemplated by the Indemnity Provision and the "sole negligence" limitation in the Indemnity Provision does not apply;

ii.	Williams must assume the defense of the Hernandez Lawsuit on behalf of BrandSafway;

iii.	Williams must indemnify BrandSafway for any and all costs of defense incurred defending the Hernandez Lawsuit through the date of judgment; and

iv.	Williams must indemnify BrandSafway for any further damages, losses, liabilities, and/or expenses (including reasonable attorney fees and costs) resulting from, arising out of, or in any way related to the Contract, the scaffolding, or the services performed by MobleySafway for Williams, including but not limited to any liability ultimately incurred by BrandSafway in connection with the Hernandez Lawsuit;

B.	A money judgment awarding BrandSafway all compensatory, consequential, incidental, and other damages arising from Williams' breach of contract, in an amount to be determined at trial;

C.	An award of costs, fees, and other disbursements allowed by law; and

D.	Such further relief as the Court deems just and appropriate.


**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 57, PLAINTIFF REQUESTS A SPEEDY HEARING ON ITS REQUEST FOR DECLARATORY RELIEF.**

Dated this 12th day of April, 2019.

                        Respectfully submitted,

                        GASS WEBER MULLINS LLC
*Attorneys for Plaintiff BrandSafway Solutions, LLC*


                        s/Daniel A. Manna
                        Daniel A. Manna
                        241 N. Broadway, Suite 300
                        Milwaukee, WI 53202
                        Telephone:    (414) 223-3300
                        Facsimile:    (414) 224-6116
                        manna@gwmlaw.com